UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JERRY LAVON WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-06-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff Jerry Lavon Williams brought this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Williams' application for disability insurance benefits (DIB) and supplemental security income (SSI). The Court, having reviewed the record and for the reasons set forth herein, will deny Williams' Motion for Summary Judgment [R. 13] and grant the Commissioner's [R. 14].

I

Williams filed applications for DIB and SSI on February 19, 2010. [Transcript (Tr.) 119; Tr. 126]. He alleges a disability beginning on May 9, 2011, due to neuropathy, coronary artery disease, obesity, glaucoma, hypertension, right shoulder pain consistent with a rotator cuff injury, and low back pain. [R. 12-1 at 2]. Williams' applications were denied initially [Tr. 157] and upon reconsideration [Tr. 166]. Subsequently, at Williams' request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Karen R. Jackson on February 5, 2013. [Tr. 82-112]. During the hearing, the ALJ heard testimony from Williams and vocational

expert (VE) Joyce Forrest. [*Id.*] Williams, who was forty-nine years old at the time of the hearing, has a high school diploma and one year of college education. [Tr. 88]. He has past relevant work experience as an emergency medical technician, a school bus driver, and a general laborer. Though the VE testified that he could no longer perform that work, she found that there are jobs that exist in significant numbers in the national economy that Williams could perform, and the ALJ accepted that testimony. [Tr. 106-11].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920.[1] First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1545. Fourth, the ALJ must determine

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past relevant work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 416.920(a)(4)(v).

In this case, at Step 1, the ALJ found that Williams has not engaged in substantial gainful activity since May 9, 2011, the alleged onset date. [Tr. 13]. At Step 2, the ALJ found that Williams' had the following severe impairments: diabetes mellitus with peripheral neuropathy; coronary artery disease, status-post stenting; obesity; hypertension; right shoulder pain consistent with rotator cuff injury; low back pain with history of disc bulging and stenosis. [*Id*.] At Step 3, the ALJ found that Williams' impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 14]. The ALJ then considered the entire record and determined that Williams possessed the residual functional capacity to perform "less than sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)" with limitations on the following:

> lifting 10 pounds frequently and 20 pounds occasionally; standing or walking 2 hours in an 8-hour day; sitting 6 hours in an 8-hour day; 30 minute sit/stand option; occasionally climb ramps or stairs; never climbing ladders, ropes or scaffolds; occasionally balancing, stooping, kneeling, crouching or crawling; no overhead reaching with the right upper extremity; occasionally push or pull with the right upper extremity; frequently handling, fingering and feeling with the bilateral upper extremities; he should avoid hazards such as unprotected heights or dangerous machinery, full-body vibration and do no commercial driving; and should avoid temperature extremes.

[Tr. 15]. At Step 5, the ALJ accepted the VE's hearing testimony that Williams is unable to perform past work, but that there are a significant number of jobs in the national economy that Williams could perform. [Tr. 19]. Accordingly, on March 29, 2013, the ALJ found that

3

Williams was not "disabled" and therefore is ineligible for DIB and SSI. [Tr. 20]. The Appeals Council declined to review the ALJ's decision [Tr. 1], and Williams now seeks judicial review in this Court.

II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

A

Williams' first argues that the ALJ "failed to accurately describe the claimant in the hypothetical to the vocational expert." [Pl.'s Mot. Summ. J., R. 13-1 at 7]. He specifically and exclusively focuses his challenge on the ALJ's RFC determination that Williams could "frequently handl[e], finger[] and feel[] with the bilateral upper extremities." [Tr. 15]. That ability was reflected in two of the three hypothetical questions that the ALJ posed to the VE. [Tr. 15; Tr. 107-111]. Williams contends that the "evidence overwhelming [sic] support [sic] that Mr. Williams' [manipulative] limitations should have been only occasionally or even none." [Pl.'s Mot. Summ. J., R. 13-1 at 8]. Williams goes on to cite certain medical records, his own allegations, and the May 2013 RFC opinion submitted by treating physician Dr. Michael Raichel. [*Id.*] Williams' argument is somewhat unclear, and the Court construes it as both a substantial evidence challenge to the manipulative ability determination in the RFC and a claim regarding the accuracy of the hypothetical questions posed to the VE.

1

Williams' argument is, first, construed as claiming that the residual functional capacity adopted by the ALJ and reflected in the hypothetical question upon which the ALJ relied was not supported by substantial evidence in regards to the frequent handling limitation. He cites medical records relating to his 2007 physical therapy for his left shoulder, [Tr. 740-44], his own subjective allegations, [Tr. 91-92; Tr. 321-23], and the May 2013 RFC opinion submitted by treating physician Dr. Michael Raichel, [Tr. 1018]. Considering each of those pieces of evidence as well as the record as a whole, the Court concludes that substantial evidence supports both the ALJ's RFC determination and her finding that Williams' impairments with regard to his

5

ability to "handle, finger, and feel with the bilateral upper extremities" were not as limiting as he claimed.

First, by citing his own descriptions of his condition from the hearing and application documents, Williams ostensibly claims that his subjective allegations relating to his ability to use his hands should have been taken into account by the ALJ and were improperly rejected without a proper credibility determination under 20 C.F.R. § 404.1529. Specifically, Williams cites his hearing testimony that he has difficulty buttoning and zipping his pants, putting on a belt, or picking up small objects like dice due to his neuropathy. [Tr. 91-92]. [Pl.'s Mot. Summ. J., R. 13-1 at 7-8]. He also points to his response to an agency daily living questionnaire in which he self-reported that he uses a "gopher" tool to pick things up, [Tr. 321], he cannot open cans, [Tr. 289], and he has difficulty using his hands [Tr. 292]. [Pl.'s Mot. Summ. J., R. 13-1 at 7-8].

In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, ALJs employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have

6

> taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). Importantly, an evaluation of the claimant's credibility is within the province of the ALJ – not the reviewing court. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981)).  Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

ALJ Jackson cited the correct test and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." [Tr. 17].  After discounting some of Williams' allegations about his other conditions, ALJ Jackson pointed to direct examples from the record that counter Williams' representations relating to his manipulative abilities.  She pointed out that despite his diabetic peripheral neuropathy, "[Williams] does not require an assistive device for ambulation and is still able to play guitar at church" – an activity he does twice a week.  [Tr. 18; Tr. 103-04].  She also noted that with regard to his diabetes generally that "there is evidence of noncompliance with a diabetic diet."  [Tr. 17 (citing Tr. 598)].  Indeed, on numerous occasions, Williams' medical records indicate that "better compliance with [a] diabetic diet" could help alleviate his neuropathy and his diabetes in general.  [Tr. 614 (April 13, 2011), 591 (April 10, 2010), 579

7

(December 22, 2009)]. Although Williams' office visit records reflect his subjective complaints of neuropathy in his legs, [Tr. 636], *no* objective medical evidence references, much less undermines, his ability to "frequently handl[e], finger[] and feel[] with the bilateral upper extremities." The objective medical evidence and Williams' own hearing testimony regarding his daily activities demonstrate that the ALJ's decision to accord less weight to Williams' subjective allegations about his manipulative limitations was therefore reasonable. Given the dearth of any documentation or reference to manipulative limitations in the objective medical evidence, the ALJ's RFC determination on that issue was, likewise, supported by substantial evidence.

      Williams cites medical records regarding physical therapy he underwent for his left shoulder in 2007, but this irrelevant evidence does not change the conclusion that substantial evidence supports the ALJ's RFC for Williams' manipulative abilities. Williams was discharged from his physical therapy treatments for his left arm on January 8, 2008. [Tr. 886 (noting Williams was at his "max potential" in recovery)]. Williams' left shoulder problems had therefore been resolved by the time he applied for benefits in 2011, and he was only complaining of *right* shoulder pain at the time of his alleged disability onset date. [*See* Tr. 1000 (first complaint of *right* shoulder pain documented in office visit records on May 10, 2012). In fact, the ALJ agreed with Williams that his *right* shoulder injury "reflects right upper extremity limitations," [Tr. 18], and ultimately provided a limitation in the RFC for "no overhead reaching with the right upper extremity" and "occasionally push[ing] or pull[ing] with the right upper extremity," [Tr. 17]. There is, however, no indication in the record that Williams' now-rehabilitated *left* shoulder injury affects his distinct ability to "frequently handl[e], finger[] and feel[] with the bilateral upper extremities."

8

Finally, the ALJ properly considered the medical opinions in the record.[2] Consultative examiner Dr. Mark Burns opined that Williams had no physical limitations. [Tr. 567-70]. State agency medical consultant Dr. Amanda Lange opined that Plaintiff had some limitations, including lifting limits (20 pounds occasionally and 10 pounds frequently), standing, walking, and sitting limits (six hours in an eight hour work day), and only occasionally climbing ladders, ropes, or scaffolds; however, she opined that Williams had no manipulative limitations. [Tr. 152-55]; [*accord* Tr. 120-24 (state agency consultant Shannon Duncan, SDM)]. In her decision, the ALJ explained that she gave little weight to Dr. Burns' opinion because she determined that the weight of the evidence supported an RFC with some physical limitations. [Tr. 18]. She noted that Dr. Lange's opinion, though not entitled to controlling weight, supported her RFC determination. As to manipulative abilities – the sole aspect of the RFC that Williams challenges – the medical opinions that were properly before the ALJ are in agreement that Williams has no manipulative limitations. [Tr. 122, 153, 569]. Based on the weight of the objective medical evidence and the medical opinions in the record, the ALJ's determination that Williams was able to "frequently handl[e], finger[] and feel[] with the bilateral upper extremities" was supported by substantial evidence.

2

In turn, Williams argues that the VE's testimony could not serve as substantial evidence since the RFC on which the ALJ relied in forming the hypothetical questions inaccurately reflected his manipulative abilities. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant

---

[2] For the reasons discussed infra Part II(B), the Court will not consider the RFC opinion of Williams' treating physician Dr. Raichel in this substantial evidence analysis.

9

can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir.2002); *Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 633 (6th Cir.2004)). Because the Court concludes, for the reasons stated above, that the ALJ's decision that Williams was capable of "frequently handling, fingering and feeling with the bilateral upper extremities" is supported by substantial evidence, the ALJ's questions to the VE, were accurate. The VE's response to that question was therefore properly relied upon by the ALJ at Step Five as substantial evidence that Williams could perform other work.

B

In support of his challenge to the accuracy of the hypothetical questions posed to the VE and as a ground for remand based on new evidence, Williams points to an opinion from Dr. Michael Raichel, his treating physician. Dr. Raichel completed an RFC opinion recommending that, relevant here, Williams could occasionally use his right hand for repetitive action, and could frequently use his left hand for such tasks. [Tr. 1018]. This opinion is dated May 6, 2013, over a month after ALJ Jackson's decision on March 29, 2013, so it was not before the ALJ when she made her decision. The Raichel opinion was mailed to the Appeals Council by Williams' counsel on May 21. The Sixth Circuit has held that where new evidence is submitted to the Appeals Council, but the Appeals Council declines review of the case, the district court cannot consider that new evidence in deciding whether the ALJ's decision was supported by substantial evidence. *E.g.*, *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Here, the Appeals Council did just that, [Tr. 1-2], so this Court cannot consider Dr. Raichel's opinion in its substantial evidence review.

10

Under *Cotton* and *Cline*, "a district court can . . . remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline*, 96 F.3d 146, 148 (6th Cir. 1996). This is a two-fold requirement. *Id.* ("In order to obtain a remand for further administrative proceedings, section 405(g) clearly requires a showing of *both* materiality and good cause." (emphasis added)). Williams notes that, in a third hypothetical, the ALJ asked whether any jobs would be available in the national economy if an individual under all of the limitations in the RFC ultimately found in the ALJ's ultimate decision, plus a limitation on standing and walking only two hours during an eight hour work day and was also "limited to only occasional handling, fingering, and kneeling." [Tr. 111]. The VE responded that no jobs would be available. [*Id.*] Even if this were sufficient to establish materiality, Williams has made no showing of good cause. According to his medical records, Williams has been treated by Dr. Raichel since at least November 2009, well before a hearing before the ALJ was requested or set, [Tr. 171 (hearing request dated December 27, 2011); Tr. 188-208 (hearing notice dated November 19, 2012, advising claimant of how to submit additional evidence prior to the hearing)], and over a year before his application and alleged onset date (May 9, 2011). Williams thus had over two years to obtain an RFC from Dr. Raichel, with whom he has a long-established treating relationship, and he offers no explanation for why he failed to submit this evidence to the ALJ. Accord, e.g., Cline, 96 F.3d at 149 (no good cause shown where counsel had "an entire month" after the hearing before the ALJ but before the issuance of a decision to notify the ALJ of new evidence from a late-scheduled psychiatric evaluation, but opted instead to submit it to the Appeals Council). He has therefore failed to show that a remand is warranted on the basis of this new evidence.

C

Finally, Williams argues that the ALJ's decision is inconsistent with Social Security Rulings 96-9p and 96-3p. As noted above, the ALJ is required to identify a claimant's "severe impairments" at Step Two. Specifically, 20 C.F.R. § 404.1520(c) provides that an impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities." Social Security Ruling 96-3p, a guidance document provided to clarify how an ALJ is to evaluate the severity of an impairment, reiterates that standard. In turn, Ruling 96-9p provides guidance about the impact of a residual functional capacity for less than a full range of sedentary work (Step Four) on the claimant's ability to do other work (Step Five). Social Sec. Ruling 96-9p, 1996 WL 374185, *1 (July 2, 1996).

Williams' brief on this point is conclusory, vague, and poorly developed, but his ostensible argument can be summarized as follows: Because the ALJ found that his diabetic neuropathy (a disease which can include symptoms of manipulative weakness) was a "severe impairment" at Step Two, she was also required to find that he had functional limitations on his manipulative abilities. As a result, the ALJ's RFC determination, which imposed no limitation on his manipulative abilities, as well as the VE's responses based on that RFC determination, were inaccurate. Williams' argument, first, misapprehends the nature of the "severe impairment" determination at Step Two. While the symptoms underlying a "severe impairment" are to be considered by the ALJ in assessing the claimant's functional limitations at Step Four, *see, e.g.*, Social Sec. Ruling 96-8p (1996), the identification of an impairment as "severe" at Step Two is not determinative of the ALJ's RFC determination (unless the impairments meets or medially equals the severity of a Listing), *see* Social Sec. Ruling 96-4p ("Once the existence of a medically determinable physical or mental impairment(s) that could

12

reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s).").

His argument based on Ruling 96-9p, similarly unclear, can be construed as follows: The ALJ already found in her decision that Williams was capable of less than a full range of sedentary exertion. If she had found that he could only occasionally (rather than frequently) handle or feel, there would have been no jobs available. Her RFC without such a manipulative limitation, he argues, "failed to follow" Ruling 96-9p. [Pl.'s Mot. Summ. J., R. 13-1 at 10]. Although, as Williams emphasizes, Ruling 96-9p points out the reality that "[a]ny *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base," Social Sec. Ruling 96-9p, 1996 WL 374185 at *8, he fails to appreciate that the Ruling also makes clear that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" *Id.* at *1. As to both of these considerations, the ALJ complied with the required sequential analysis and relevant policy guidance in assessing Williams' severe impairments, his RFC, and whether other jobs existed. His reliance on each of these Rulings is therefore misplaced.

Williams' reliance on *Siedlecki v. Apfel*, 46 F. Supp. 2d 729 (N.D. Ohio 1999) is also misplaced. In that case, the district court ordered remand because the ALJ found that the claimant had an RFC of less than a full range of sedentary work but, contrary to the guidance in Social Security Ruling 83-9, the ALJ failed to consult a vocational expert to determine if there

13

were other jobs that the claimant could perform. Here, however, in compliance with Ruling 83-9 and the holding in *Siedlecki*, the ALJ consulted a VE about an RFC with and without a manipulative limitation. Williams' arguments on this ground are unavailing.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 13] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 14] is **GRANTED**

(3) **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 22nd day of September, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

14